TIMOTHY COURCHAINE
United States Attorney
District of Arizona

KEVIN M. RAPP
Assistant United States Attorney
Arizona State Bar No. 014249
Two Renaissance Square
40 N. Central Ave., Suite 1800
Phoenix, Arizona 85004
Telephone: 602-514-7500
Email: kevin.rapp@usdoj.gov
*Attorneys for Plaintiff*



FILED ___ LODGED
___ RECEIVED ___ COPY

APR 22 2025

CLERK U S DISTRICT COURT
DISTRICT OF ARIZONA
BY_____ DEPUTY

REDACTED FOR
PUBLIC DISCLOSURE

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF ARIZONA

| United States of America, | No. CR-25-00610-PHX-SHD (ASB) |
|---|---|
| Plaintiff, | **INDICTMENT** |
| vs. | VIO: 26 U.S.C. § 7201 (Tax Evasion) Count 1 |
| Payam Abedi, | 18 U.S.C. §1343 (Wire Fraud) Counts 2-4 |
| Defendant. | 18 U.S.C. § 1957(a) (Transactional Money Laundering) Counts 5–9 |

**THE GRAND JURY CHARGES:**

**INTRODUCTION**

1. Defendant PAYAM ABEDI ("ABEDI"), 51, resides in Maricopa County, Arizona. ABEDI is a dentist and is the owner of XO Dentistry- AZ PC ("XO Dentistry 2"), which was established in 2019. ABEDI operates two dental offices located in Phoenix, AZ and Gilbert, AZ, respectively.

2. ABEDI previously owned both Best Choice Dental Group PLLC ("Best Choice Dental") and XO Dentistry PLLC ("XO Dentistry 1"), but both were closed in 2019. ABEDI opened Best Choice Dental in 2012 and XO Dentistry 1 in 2015.

## SCHEME TO EVADE THE PAYMENT OF TAXES

3. ABEDI attempted to evade the payment of taxes for calendar years 2014-2018 in the following manner:

    a. For tax years 2014-2016 ABEDI and his wife, with whom he filed joint tax returns, filed business tax returns for several of his dental practices that overstated expenses and understated income, which lowered his taxable income on his personal returns.

    b. The ABEDIS were audited in 2016 by the IRS for tax years 2014, 2015, and 2016, and the IRS audit found that the ABEDIS owed additional taxes for those tax years. The ABEDIS petitioned the 2014 and 2015 audit results in U.S. Tax Court. In 2019, the ABEDIS agreed to resolve their challenge in U.S. Tax Court by agreeing to pay tax due and owing for 2014 and 2015 in the amounts of $173,230 and $285,575, respectively (the "2019 Settlement"). After agreeing that they owed the additional taxes, the ABEDIS subsequently made minimal payments toward those two tax years.

    c. The ABEDIS never contested the audit results for tax year 2016, which found that the ABEDIS owed additional taxes.

    d. The ABEDIS filed a tax return for tax year 2017 in which the ABEDIS reported that they owed $363,803 in taxes. The ABEDIS, however, did not pay the tax due and owing for tax year 2017.

    e. The ABEDIS filed a tax return for tax year 2018 in which the ABEDIS reported that they owed $258,109 in taxes. The ABEDIS, however, did not pay the tax due and owing for tax year 2018.

    f. On or about April 2, 2019, ABEDI signed an asset purchase agreement, through which Affordable Care LLC ("Affordable") agreed to purchase Best Choice Dental and XO Dentistry 1 (along with other companies ABEDI controlled) for approximately $3.2 million. Per the purchase agreement, on or about April 2, 2019, ABEDI received an

- 2 -

1  initial installment payment of $1,653,035 from Affordable. ABEDI subsequently received
2  a second payment from Affordable of approximately $900,000 in April 2021.

3      g.    As of 2020, the ABEDIS failed to pay the 2019 Settlement as well as the
4  taxes he owed for tax years 2016-2018. The ABEDIS owed a total of approximately
5  $1,266,086.64 in taxes in early 2020, excluding penalties and interest.

6      h.    The ABEDIS sought to pay a lower tax amount by filing with the IRS an
7  Offer in Compromise ("OIC") (IRS Form 656) on or about February 7, 2020. An OIC
8  allows a taxpayer to potentially settle tax debt for less than the full amount owed. A
9  taxpayer may file an OIC if the taxpayer is unable to pay the taxpayer's full tax liability or
10 doing so creates a financial hardship. In evaluating whether to accept or reject the OIC, the
11 IRS considers a taxpayer's ability to pay, income, expenses and asset equity. The IRS
12 conducts this evaluation by reviewing two forms that can be filed in support of an OIC:
13 i) an IRS Form 433-A (Collection Information Statement for Wage Earners and Self-
14 Employed Individuals), in which a taxpayer reports personal assets; and ii) Form 433-B
15 (Collection Information Statement for Businesses), in which the taxpayer reports business
16 assets.

17     i.    In their OIC, the ABEDIS proposed paying only $110,000 in lieu of their
18 $1,266,086.64 tax liability. Under penalty of perjury, ABEDI falsely attested that "[t]he
19 taxpayers are submitting the Offer in Compromise because they cannot fully pay their past
20 tax liability." In fact, ABEDI received a payment from Affordable of approximately $1.6
21 million in 2019, which ABEDI could have used to pay his tax liability. As of 2020, ABEDI
22 also knew that he would be receiving additional payments from Affordable in 2021 that
23 would allow him to pay his tax liability. In support of his OIC, ABEDI filed an IRS Form
24 433-A but failed to submit a Form 433-B to report business assets he owned.

25     j.    In his Form 433-A, ABEDI concealed assets he owned from the IRS. For
26 example, ABEDI falsely stated that he did not have any notes receivable, despite expecting
27 that he would receive future payments from Affordable of $900,000 and $180,000
28 following the sale of his dental practice. ABEDI also falsely claimed that he only owned

a 2% interest in his primary residence when, in fact ABEDI owned (along with his wife) a 100% interest in his primary residence directly and/or through trusts he controlled.

k.  In November 2020, the IRS requested that the ABEDIS provide a Form 433-B after it was discovered they failed to disclose certain business assets. The ABEDIS submitted an unsigned Form 433-B to the IRS on or about February 10, 2021, in which the ABEDIS disclosed an additional $868,000 in business assets. An IRS officer subsequently requested that the ABEDIS submit a signed Form 433-B and the ABEDIS failed to submit a signed Form 433-B Form.

l.  The IRS denied the ABEDIS' OIC on or about May 25, 2021.

m.  ABEDI engaged in a scheme to evade paying taxes owed for tax years 2014-2018 by taking various affirmative steps, including by providing false statements to the IRS in attempt to dramatically lower the taxes owed and to conceal assets, and by spending funds received from Affordable for personal purchases. For example:

i.  In May 2019, ABEDI purchased a home for $505,000. ABEDI paid for the home with a $10,000 check from the Best Choice Dental Group bank account and $101,817.97 cashier's check from a Wells Fargo business account. ABEDI took out a mortgage for the remaining balance for the home.

ii.  In September 2019, ABEDI purchased a business property in the amount of $194,147 for Century City Investments. ABEDI paid for the property with a $5,000 check and a $189,147 payment from the Best Choice Dental Group bank account.

iii.  Between May and December 2019, ABEDI paid approximately $49,222 for private high school tuition.

iv.  Between April and July 2019, ABEDI wired $33,000 from the Best Choice Dental Group bank account to his personal bank account. ABEDI used the money to pay for personal expenses, such as his car loan and a mortgage.

v.  In addition to personal expenditures, ABEDI sent two wire transfers to individual F.T. totaling approximately $386,700, shortly after receiving the initial

payment from Affordable. ABEDI made one transfer in July 2019 and the second in August 2019.

n.   As of March 2025, the ABEDIS' additional tax due and owing for tax years 2014- 2018, including penalties and interest up to the present, is approximately $2,385,000, which includes tax due of $372,763 (2014), $633,084 (2015), $345,476 (2016), $626,961 (2017), and $407,631 (2018).

## ABEDI'S PAYCHECK PROTECTION PROGRAM ("PPP") AND ECONOMIC INJURY DISASTER LOAN ("EIDL") FRAUD

4. Pandemic-related federal legislation enacted in March 2020 created the Paycheck Protection Program ("PPP") to provide potentially forgivable loans to small businesses for payroll expenses and certain specified business-related expenses. The Small Business Administration ("SBA") oversaw the program, and loans were made by SBA-approved lenders.

a.   As part of the application process, the business was required to certify in SBA Form 2483, among other things, that: (1) the business had employees for whom it paid salaries and payroll taxes or had independent contractors; and (2) the funds would be used to retain workers and maintain payroll or to make business mortgage interest payments, business lease payments and other specified business expenses.

b.   As part of the loan forgiveness process, the business was required to certify in SBA Form 3508, among other things, that the amount requested for forgiveness "was used to pay costs that are eligible for forgiveness (payroll costs to retain employees; business mortgage interest payments; business rent or lease payments; or business utility payments)."

c.   In addition to loans through PPP, the provisions of the CARES Act, allowed for SBA to offer Economic Injury Disaster Loans ("EIDL") funding to business owners negatively affected by the COVID-19 pandemic. Using the SBA online portal, EIDL applicants submitted personal and business information in support of each EIDL application, and they did not have to submit supporting documentation of any sort.

d.   The EIDL application included a jurat-like paragraph where the applicant affirmed that the information submitted was true and correct under the penalty of perjury and applicable criminal statutes. The application process involved filling out assorted data fields relating to the size of the affected business entity, the ownership of said business, and other information such as the number of employees and gross business revenues realized in the 12 months prior to the COVID-19 impact on the national economy.

e.   The SBA Office of Disaster Assistance ("ODA") controls the EIDL program. The ODA has authority over all loans created and disbursed under the EIDL program.

f.   Pursuant to the provisions governing the EIDL program, loan proceeds must be used by that business on certain permissible expenses. The EIDL (working capital) loans may have been used by the afflicted business, which must have existed in an operational condition on February 1, 2020, to pay fixed debts, payroll, accounts payable, and other bills that could have been paid had the COVID-19 disaster not occurred.

**A. PPP Loan**

5. The Economic Aid Act provides that, to be eligible for a Second Draw PPP Loan, the borrower must have experienced a revenue reduction of 25% or greater in 2020 relative to 2019.

6. ABEDI owned XO Dentistry-2 and filed business tax returns (Form 1120, U.S. Corporation Income Tax Return) for the business. The 2019 Form 1120 was filed on or about December 14, 2020, and XO Dentistry 2 reported a total income of $1,956,809 in 2019.

7. The 2020 Form 1120 for XO Dentistry 2 was filed on or about November 8, 2021, and XO Dentistry 2 reported a total income of $2,132,771 in 2020.

8. Despite an increase in revenue between 2019 and 2020, ABEDI applied for a second PPP draw on or about February 15, 2021, in which he falsely claimed that XO Dentistry 2's 2020 annual gross receipts were $1,257,602.

9. As a result of ABEDI's false statement on his PPP application, PPP funds of $148,555 were dispersed to BOA account XXXXXX99533 on or about March 10, 2021.

10. ABEDI's second draw PPP loan for XO Dentistry 2 was forgiven on or about September 21, 2022.

**B. EIDL Loan**

11. ABEDI owned Best Choice Dental and filed business tax returns (Form 1065, U.S. Return of Partnership Income) for the business. The 2018 Form 1065 was filed on or about October 28, 2019, and Best Choice Dental reported a total income of $1,380,325. The 2019 Form 1065 was filed on or about February 8, 2021, and was marked "Final Return" and had a total income of $412,078.

12. On or about July 14, 2020, despite Best Choice Dental no longer existing as of 2019, ABEDI submitted an EIDL application for Best Choice Dental. ABEDI misrepresented the income on the EIDL application by stating the business had 2019 gross revenues of $1,380,324. The loan was funded on or about August 2, 2020. ABEDI received $149,900 into Best Choice Dental Wells Fargo business bank account XXXXX697905 on or about August 4, 2020.

13. ABEDI owned XO Dentistry 1 and filed business tax returns (Form 1065, U.S. Return of Partnership Income) for the business. The 2018 Form 1065 was filed on or about October 28, 2019, and had a total income of $1,285,594. The 2019 Form 1065 was filed on or about February 8, 2021, and was marked "Final Return" and had a total income of $252,031.

14. On September 25, 2020, despite XO Dentistry 1 being defunct as of 2019, ABEDI submitted an EIDL application for XO Dentistry 1. ABEDI misrepresented on the EIDL application that the business had 2019 gross revenues of $1,285,000. The loan was funded on or about October 1, 2020. ABEDI received a deposit of $149,900 into XO Dentistry 1's Wells Fargo business bank account XXXX500679 on or about October 2, 2020.

15. Between approximately September 2020 and December 2020 ABEDI used EIDL funds for his two defunct companies to pay Citi Bank and American Express credit card bills, which included many charges for personal expenses.

16. ABEDI fraudulently misstated his former companies' 2019 total income to qualify for the EIDL loans. Moreover, ABEDI filed for EIDL loans in 2020 for companies that were closed in 2019. In sum, he fraudulently received approximately $300,000 in EIDL loans for Best Choice Dental and XO Dentistry 1.

## COUNT 1
### Tax Evasion
### (26 U.S.C. § 7201)

17. The above factual allegations are realleged and incorporated by reference.

18. Beginning on an unknown date, but no later than on or about April 2, 2019, and continuing through April 22, 2025, in the District of Arizona and elsewhere, the defendant, PAYAM ABEDI, did willfully attempt to evade and defeat the payment of a large part of the income tax which was due and owing by him to the United States of America for the years 2014, 2015, 2016, 2017, and 2018, and by committing the following affirmative acts, among others:

   a. On or about February 7, 2020, submitting an Offer in Compromise ("OIC") (IRS Form 656) to the IRS in which ABEDI falsely claimed that he and his wife could not pay their past tax liability.

   b. On or about February 7, 2020, submitting a Form 433-A (Collection Information Statement for Wage Earners and Self-Employed Individuals) to the IRS in which ABEDI falsely claimed that he and his wife did not have any notes receivable, despite him expecting to receive future payments from Affordable of $900,000 and $180,000 related to the sale of the dentistry business. ABEDI further falsely claimed on the same form that he and his wife only owed a 2% interest in their primary residence when, in fact the ABEDIS owned a 100% interest in their primary residence directly and/or through trusts they controlled.

   c. In or about May 2019, ABEDI used approximately $111,818 in cash assets toward the purchase of a new home.

  d. In or about September 2019, ABEDI used approximately $194,417 in cash assets toward the purchase of a new business property.

  e. Between in or about May and December 2019, ABEDI used approximately $49,222 in cash assets toward private high school tuition.

  f. Between in or about April and July 2019, ABEDI used approximately $33,000 in cash assets to pay for personal expenses, such as his car loan and a mortgage.

  g. Between in or about July and August 2019, ABEDI used approximately $386,700 in cash assets to pay an individual F.T.

All in violation of Title 26, United States Code, Section 7201.

**COUNTS 2–4**
**Wire Fraud**
**(18 U.S.C. § 1343)**

19. The above factual allegations are realleged and incorporated by reference.

20. Beginning at a time unknown to the Grand Jury, but at least as early as August 2020, and continuing to a time unknown to the Grand Jury, but to at least in or about March 2021, in the District of Arizona and elsewhere, ABEDI, individually and doing business under the entities described above, along with other individuals and entities known and unknown to the Grand Jury, knowingly and willfully devised and intended to devise a scheme and artifice to defraud and to obtain money and property from the PPP and EIDL programs by means of materially false and fraudulent pretenses and representations, and by the concealment and omission of material facts.

21. On or about the dates listed below, for the purpose of executing and attempting to execute the scheme or artifice to defraud and to obtain money and property, ABEDI, individually and doing business under the entities described above, knowingly transmitted or caused to be transmitted, by means of wire and radio communications in interstate commerce, certain writings, pictures, signals, and sounds, to and from the District of Arizona and elsewhere, as set forth below, with each instance being a separate count of this indictment:

| Count | Company and Loan | Wire Date | Sender | Receiving Bank | Amount |
|---|---|---|---|---|---|
| 2 | (Best Choice; EIDL) | 08/04/2020 | SBA Denver Finance Center | Wells Fargo Account 7905 (Arizona) | $149,900 |
| 3 | (XO Dentistry 1; EIDL) | 10/02/2020 | SBA Denver Finance Center | Wells Fargo Account 0679 (Arizona) | $149,900 |
| 4 | (XO Dentistry 2; PPP) | 03/10/2021 | Itria Ventures NY, NY | Bank of America Account 9533 (Arizona) | $148,555 |

All in violation of Title 18, United States Code, Section 1343.

## COUNTS 5–9
**Transactional Money Laundering**
**(18 U.S.C. § 1957(a))**

22. The above factual allegations are realleged and incorporated by reference.

23. On or about the dates listed below, ABEDI, individually and doing business under the entities described above, along with other individuals and entities known and unknown to the Grand Jury, knowingly engaged and attempted to engage in the following monetary transactions in the United States in criminally derived property of a value exceeding $10,000, derived from specified unlawful activity, namely wire fraud in violation of 18 U.S.C. § 1343, with each instance being a separate count under this indictment:

| Count | Wire Date | Sender | Receiving Financial Institution | Amount |
|---|---|---|---|---|
| 5 | 8/10/2020 | Best Choice Dental Group Wells Fargo account 7905 (Arizona) | American Express | $10,954.33 |
| 6 | 8/21/2020 | Best Choice Dental Group Wells Fargo account 7905 (Arizona) | American Express | $32,605.27 |
| 7 | 9/14/2020 | Best Choice Dental Group Wells Fargo account 7905 (Arizona) | Citibank | $16,710.31 |
| 8 | 11/20/2020 | Best Choice Dental Group Wells Fargo account 7905 (Arizona) | Check to Wells Fargo | $48,745.73 |
| 9 | 01/07/2021 | Best Choice Dental Group Wells Fargo account 7905 (Arizona) | American Express | $28,000 |

All in violation of Title 18, United States Code, Section 1957(a).

A TRUE BILL

*s/*
FOREPERSON OF THE GRAND JURY
Date: April 22, 2025

TIMOTHY COURCHAINE
United States Attorney
District of Arizona

*s/*
KEVIN M. RAPP
Assistant U.S. Attorney